IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAYME REYNOLDS,

     Plaintiff,                           No. CIV S-10-161 EFB

     vs.

UNITED STATES OF AMERICA,

     Defendant.                       ORDER

_____/

On February 21, 2012, plaintiff filed a motion to amend her complaint and/or augment her administrative claim to seek damages in an amount in excess of the sum claimed in plaintiff's administrative claim, and noticed the motion for hearing on March 21, 2012. Dckt. No. 36. Defendant opposes the motion. Dckt. No. 38. For the reasons stated herein, plaintiff's motion is denied.[1]

I.    BACKGROUND

Plaintiff Jayme Reynolds filed this negligence action on January 21, 2010 under the Federal Tort Claims Act ("FTCA") alleging that she sustained injuries in a motor vehicle accident that occurred on January 24, 2008. Dckt. No. 1. Plaintiff was a passenger in a vehicle

---

[1] This action is before the undersigned pursuant to the consent of the parties. *See* 28 U.S.C. § 636(c); E.D. Cal. L.R. 305; Dckt. No. 23.

1

that collided with a postal truck driven by a United States Postal Service letter carrier, and she allegedly sustained injuries as a result. *Id.*

Plaintiff filed an administrative claim on July 18, 2008, in which she described the nature of her injuries as head, facial, neck, shoulder, back, and foot injuries. She claimed damages in the amount of $100,000.

Plaintiff now seeks to increase her damages amount from $100,000 to $250,000, arguing that (1) on June 10, 2010, plaintiff's doctor determined for the first time that the pain plaintiff was continuing to experience was permanent; (2) on August 4, 2010, plaintiff's doctor determined for the first time that plaintiff's olfactory nerve had been severed in the accident, causing a permanent loss of her sense of smell; and (3) in January 2011, plaintiff developed a new condition, severe gastroenteritis, as a result of the pain medication the accident requires plaintiff to take. Dckt. No. 36 at 2.

## II. TIMELINESS OF MOTION

On January 7, 2011, the court issued a status (pretrial scheduling) order pursuant to Federal Rule of Civil Procedure ("Rule") 16. Dckt. No. 24. Among other things, the order provided that good cause would be required to amend the complaint and that all law and motion was to be completed by October 26, 2011. *Id.* at 1, 2. Notwithstanding that order, plaintiff did not indicate that she would seek to amend her complaint or her administrative claim until December 28, 2011, when the parties filed their final pretrial statement. Dckt. No. 27 at 7. Accordingly, plaintiff's request to amend is untimely under the law and motion deadline set forth in the Rule 16 scheduling order, and plaintiff has not shown good cause to modify that order. *See* Fed. R. Civ. P. 16(b) ("A schedule shall not be modified except upon a showing of good cause and by leave of the district judge."); *Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604, 607-09 (9th Cir. 1992) (Rule 16(b)'s "good cause" standard applies when a plaintiff seeks to amend a complaint after the scheduling order deadline, and the primary consideration in the good cause determination is the "diligence of the party seeking the amendment");

2

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D.Cal. 1999) ("[N]ot only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation."). Nor has plaintiff shown good cause to amend her complaint.

Here, plaintiff contends that she learned of the newly discovered evidence supporting her motion to amend in June 2010, August 2010, and January 2011. However, plaintiff has provided no explanation as to why plaintiff waited until December 2011, when the parties filed their final pretrial statement, to raise the issue of amending her complaint and/or administrative claim. Moreover, the parties' joint status report filed on December 2, 2010 indicated that no amendments to the pleadings were anticipated, even though two of plaintiff's three "newly discovered" facts occurred prior to that joint status report and prior to the issuance of the Rule 16 scheduling order. *See* Dckt. No. 18 at 2; *see also Jackson*, 186 F.R.D. at 608 (stating that if a party seeking leave to amend after entry of the pretrial scheduling order was aware of those circumstances necessitating the motion for leave to amend when submitting a status report "and yet said nothing about them, then such an omission would not be 'compatible with a finding of diligence'"). Plaintiff had the opportunity to advise the court and opposing counsel that she intended to amend her complaint and/or her administrative claim prior to entry of the pretrial scheduling order, but failed to do so. She also had ample opportunity to raise the issue prior to the expiration of the time for completion of discovery and dispositive motions. As is apparent from the discussion below, there is no legitimate reason why an appropriate motion for leave to amend was not filed within the time limits set by the scheduling order. In light of that lack of diligence, the court cannot say that plaintiff was diligent in assisting the court in creating a workable Rule 16 pretrial scheduling order and complying with it. Plaintiff's request to amend her complaint and/or her administrative claim is appropriately denied on that basis alone. However, when considered on the merits, plaintiff's request to amend her complaint and/or her administrative tort claim must also be denied because the underlying basis for the motion is

unfounded.

### III. MERITS OF PLAINTIFF'S MOTION

#### A. Legal Standards

The FTCA provides plaintiffs an exclusive remedy against the United States for injuries arising out of tortious acts committed by federal government employees within the scope of their employment. 28 U.S.C. §§ 2671 *et seq.* As a prerequisite to filing suit under the FTCA, a plaintiff must exhaust his or her administrative remedies. 28 U.S.C. § 2675(a). Particularly, § 2675(a) requires a plaintiff to first present an administrative claim to the appropriate federal agency and then receive a final denial of the claim from the agency or allow six months to pass without a final disposition. *Id.* Thereafter, if the plaintiff files an action in the district court for damages, the FTCA prohibits the plaintiff from seeking damages "in excess of the amount of the claim presented to the federal agency." *Id.* § 2675(b).

Section 2675(b), however, carves out two exceptions to this cap on recoverable damages: (1) "where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency," or (2) "upon allegation and proof of intervening facts, relating to the amount of the claim." *Id.* The two exceptions are distinct: "newly discovered evidence" denotes evidence that existed when the administrative claim was filed, but was "not discoverable" at that time; "intervening facts," on the other hand, concern information or events arising after the filing of the claim. *See Lowry v. United States*, 958 F. Supp. 704, 710 (D. Mass. 1997). "While a plaintiff may seek a larger amount if he meets either of these tests, the burden of proof under both falls on the plaintiff." *Salcedo-Albanez v. United States*, 149 F. Supp.2d 1240, 1243 (S.D. Cal. 2001).

In determining whether a plaintiff satisfies one of the two exceptions, the court applies an objective standard. *See Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (remanding FTCA action and instructing district court to determine whether a claimant's injuries were "reasonably foreseeable" at the time the claimant filed the claim). Specifically,

4

information which a plaintiff could have discovered through the exercise of reasonable diligence does not qualify as newly discovered evidence or intervening facts. *See id.*; *see also Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986). In cases involving personal injuries – such as the instant case – the FTCA does not hold plaintiffs to a standard that charges them with "knowing what the doctors could not tell [them]." *Fraysier v. United States*, 766 F.2d 478, 481 (11th Cir. 1985). As one district court explained, "[W]hether the plaintiff is seeking an increase under the rubric of 'newly discovered evidence' or 'intervening facts,' one of the key issues is foreseeability. If the condition was reasonably foreseeable at the time the claim was filed, an increase will not be allowed. On the other hand, if it was not . . . [then] an increase may be allowed." *Lowry*, 958 F. Supp. at 711.

Nevertheless, "[w]hen existing medical evidence and advice put the claimant 'on fair notice to guard against the worst-case scenario' in preparing the administrative claim," an attempt to increase the amount of the claim during litigation should be rejected." *Michaels v. United States*, 31 F.3d 686, 688 (8th Cir. 1994) (citing *Reilly v. United States*, 863 F.2d 149, 172 (1st Cir. 1988)). Only in instances where an existing injury "worsen[s] in ways not reasonably discoverable by the claimant and his or her treating physician," should the claimant be allowed to increase the amount of the claim once the suit is filed. *Id.*; *see also Salcedo-Albanez*, 149 F. Supp.2d at 1244, 1245 ("As between prospective defendant and prospective plaintiff, the latter is in by far the better position to determine the worst-case scenario or, if uncertain, to paint the picture as bleakly as reason permits and conscience allows. If a plaintiff misjudges, as to matters known or easily deducible when her claim is filed, it seems more equitable for her to bear the burden of miscalculation than to impose it on the sovereign."). Thus, newly discovered evidence is evidence that materially differs from the worst-case prognosis of which the claimant knew or could reasonably have known when he filed the claim, not evidence that merely bears on the precision of the prognosis. *See Zurba v. United States*, 318 F.3d 736, 741 (7th Cir. 2002). Accordingly, in reviewing evidence to

determine whether it qualifies for one of the exceptions under § 2675(b), the court looks at what was reasonably known or discoverable at the time the claim was filed, not at what the claimant expected. *See Michaels*, 31 F.3d at 689.

B. Analysis of Plaintiff's Newly Discovered Evidence

Plaintiff contends that the following newly discovered evidence justifies amendment of her administrative claim: (1) on June 10, 2010, plaintiff's doctor determined for the first time that the pain plaintiff was continuing to experience was permanent; (2) on August 4, 2010, plaintiff's doctor determined for the first time that plaintiff's olfactory nerve had been severed in the accident, causing a permanent loss of her sense of smell, also known as anosmia; and (3) in January 2011, plaintiff developed a new condition, severe gastroenteritis, as a result of the pain medication the accident requires plaintiff to take. *See generally* Dckt. No. 36. She argues that because the permanence of her pain and loss of smell, and her new condition of severe gastroenteritis, were not reasonably discoverable at the time she presented her administrative claim in July 2008, she should be permitted to amend her complaint/administrative claim to include damages arising from those conditions. *Id.* at 6, 8.

1. Permanence of Plaintiff's Conditions

Plaintiff argues that she should be permitted to amend her administrative claim because she did not discover that her conditions would be permanent until June 2010, well after she filed her administrative claim in July 2008. According to plaintiff, on the date of her accident, she was diagnosed with a cervical strain, right facial abrasions, and a right head contusion; she was given Toradol, Dilaudid, Valium, Ibuprofin, and Vicodin; and she was told to wear a soft collar for three to five days. Dckt. No. 36 at 3, Ex. A. A week later, she was further diagnosed with a possible concussion, cervical strain secondary to a motor vehicle accident, and head trauma with headache, dizziness, and nausea. *Id.* at 3, Ex. B. Over the next several months, plaintiff underwent CT Scans for her facial bones and spine and MRIs of her cervical spine, her head and neck, and her brain. *Id.* at 3, Ex. C. The CT Scans were negative for fractures and the

MRIs were negative or normal. *Id.* Plaintiff also reported a loss of smell, which her doctor attributed to swelling of the nasal tissue, but opined it could return within one to three years. *Id.* at 4, Ex. D. Despite undergoing physical therapy and taking numerous medications, plaintiff's symptoms persisted, so her doctors recommended continued physical therapy, increased dosages of her medications, and new medications such as OxyContin, Nortiptyline, and Zoloft. *Id.* at 4, Ex. E.

In August 2008, plaintiff's doctor noted for the first time that the MRI of plaintiff's brain indicated significant soft tissue damage, including shearing of the olfactory nerve, but did not indicate or determine that the damage was permanent. *Id.* at 4, Ex. H. Instead, the doctor noted that plaintiff was gradually "doing better." *Id.* In September 2008, plaintiff's doctor again noted that he expected her symptoms to slowly get better. *Id.* at 4, Ex. I. Over the course of 2008 and 2009, plaintiff's doctors recommended continued physical therapy, narcotics, muscle relaxants, nsaids, heat, yoga, rest and acupuncture to address plaintiff's symptoms; however, plaintiff's symptoms did not improve and remained severe.

Plaintiff contends that on June 10, 2010, plaintiff's doctor, Dr. William A. Jornlin, evaluated her condition and determined, for the first time, that her pain may be permanent, requiring her to be on long term pain medication. *Id.* at 4, Ex. J. Therefore, she argues that the permanence of her condition was not reasonably discoverable at the time she presented her administrative claim in July 2008.

Defendant counters, however, that the asserted basis for the newly claimed permanence of plaintiff's condition does not amount to newly discovered evidence. Dckt. No. 38 at 5-6. Specifically, defendant argues that although plaintiff contends that at the time she filed her administrative claim her doctors anticipated her condition to be temporary, she cites no evidence in the medical record to support that contention. *Id.* at 5. To the contrary, from the time of the accident to the time plaintiff filed her administrative claim, she complained that her neck pain continued to severely limit her movement and she continued to take medication for

her continuing pain symptoms. *Id.* Therefore, defendant argues that "the fact that plaintiff could potentially continue to experience neck pain associated with her neck sprain was reasonably foreseeable at the time she filed her administrative tort claim." *Id.* at 6.

The court agrees that, given the pain plaintiff says she experienced from the time of the accident to the time she filed her claim in July 2008, the permanence of plaintiff's pain was reasonably foreseeable when plaintiff filed her administrative claim. The June 2010 statement from Dr. Jornlin does not materially differ "from the worst-case prognosis of which [plaintiff] knew or could reasonably have known when [she] filed the claim." *Von Bargen v. United States*, 2009 WL 1765767, at *2, 5 (N.D. Cal. June 22, 2009) (possibility of permanent disability and the level or duration of the pain found reasonably foreseeable at the time of filing of administrative claim where the disability manifested itself within months after the accident and was not a fact that revealed itself months or years after plaintiff filed his amended claim). Therefore, it does not amount to newly discovered evidence sufficient to justify amendment to plaintiff's administrative claim. *Id.* Thus, the plaintiff's assertion that she did not know the full extent and duration of the pain and suffering he would experience as a result of the accident at he time he filed his claim also failed to meet either exception under § 2675(b). *Id.*; *see also, Hill v. United States*, 2002 WL 855909, at *1 (N.D. Cal. Apr. 26, 2002) (plaintiff failed to meet burden of showing damages were not reasonably foreseeable where plaintiff had already been experiencing persistent pain for nearly one and one-half years at the time he filed his administrative claim and it was clear to plaintiff that the injuries were not going to heal in the foreseeable future); *Low v. United States*, 795 F.2d 466, 471 (5th Cir. 1986) ("[I]f the exact nature, extent and duration of each recognized disability must be known before § 2675(b) will be given effect, that section will be rendered useless; and the government will be unable to evaluate any claim made against it without the threat that, if it does not settle, its liability may increase substantially.").

////

For these reasons, the "new" information plaintiff asserts as recently discovered is simply not evidence of intervening facts/events nor information which she could not have discovered through the exercise of reasonable diligence. Therefore, plaintiff is not entitled to amend her administrative claim on this ground.

2. <u>Severance of Olfactory Nerve</u>

Plaintiff further contends that she should be permitted to amend her administrative claim because on August 4, 2010, Dr. Jornlin stated for the first time that plaintiff's olfactory nerve was severed, causing a permanent loss of smell. Dckt. No. 36 at 5, Ex. K.

Defendant disagrees, arguing that plaintiff's permanent loss of sense of smell is far from "newly-discovered." Dckt. No. 38 at 3-4. Defendant cites to medical records demonstrating that: plaintiff first reported "decreased smell/taste" on March 5, 2008; that she reported on numerous occasions in April 2008 that she "does not have a sense of smell;" and that in June 2008, a neurologist, Dr. Antoine Samman examined plaintiff and found "Bilateral anosmia most likely due to trauma to the olfactory nerve fibers at the cribriform plate." *Id.* at 3; Olsen Decl. Ex. B at UCD_784, 782, 781, 777, 766, 760. Dr. Samman stated: "It is unlikely that anything can be done but smell might still return to some degree within one to three years from the accident. I informed her." *Id.* at 3; Olsen Decl. Ex. B at UCD_761. Defendant observes that the document plaintiff relies upon for her allegation that on August 4, 2010, Dr. Jornlin stated for the first time that plaintiff's olfactory nerve was severed is not a progress note, but rather is a letter from her primary care physician, addressed to "Whom It May Concern" and written after plaintiff filed this lawsuit. *Id.* at 4. In other words, the notation is of historical not contemporaneous information. Defendant further contends that the letter does not state that plaintiff's loss of sense of smell is permanent, nor does it state that plaintiff's olfactory nerve was severed in the accident. It also fails to state that Dr. Jornlin's opinion is based on anything that transpired since the date that plaintiff was seen by Dr. Samman. *Id.* Defendant further argues that plaintiff "does not contend (nor could she) that any new test or evaluation was

9

performed regarding her alleged loss of sense of smell since the date that she filed her administrative tort claim." *Id.* The arguments are well taken.

Plaintiff relies on Dr. Samman's allowance for the fact that plaintiff's sense of smell *might* still return to some degree within one to three years from the accident as evidence that the permanence of her loss of smell was newly discovered. However, Dr. Samman did not find that the condition was temporary; rather, she found that the condition could be either temporary *or* permanent and her report identifies nothing to show recently discovered evidence or intervening facts/events which she could not have discovered through the exercise of reasonable diligence. This evidence simply fails to meet plaintiff's burden of demonstrating that the possibility of permanence of her loss of smell was not reasonably foreseeable when she filed her administrative claim. *See Salcedo-Albanez*, 149 F. Supp.2d at 1244 (finding that although plaintiff claimed she "did not know nor was it reasonably discoverable by her that her intraocular pressure would continue to increase in spite of the medication, and that she would permanently lose the vision in her right eye due to the constant and prolonged pressure on her right optic nerve," that did not amount to newly discovered evidence since plaintiff failed to explain why it was not reasonably foreseeable that her injuries would flourish into their present condition since seven months before plaintiff filed her administrative claim, plaintiff's ophthalmologist expressly warned plaintiff that the intraocular pressure in her right eye presented a "risk of permanent damage to the optical nerve" in the absence of medical care).

It must be noted that plaintiff is "assumed to have properly investigated the nature and extent of her injuries," and was required to guard against the worst-case scenario in preparing her administrative claim. *Salcedo-Albanez*, 149 F. Supp.2d at 1245 (citing *Reilly*, 863 F.2d at 173 ("As between prospective defendant and prospective plaintiff, the latter is in by far the better position to determine the worst-case scenario, or, if uncertain, to paint the picture as reason permits and conscience allows.")). Here, given Dr. Samman's neurological evaluation, which resulted in a finding that plaintiff's loss of smell could be either temporary or permanent

1 and which noted that the loss of smell was due to trauma to the olfactory nerve fibers, the court
2 cannot say that either the severance of plaintiff's olfactory nerve or the permanence of
3 plaintiff's loss of smell amounts to newly discovered evidence. *See Reilly*, 863 F.2d at 171
4 ("Diagnoses which are no more than cumulative and confirmatory of earlier diagnoses are
5 neither 'newly discovered evidence' nor 'intervening facts' for the purposes of § 2675(b)."); *id.*
6 at 172 ("The mere fact that these dread consequences, feared from the beginning, had become
7 more certain does not suffice to brand them 'newly discovered.'"). Nor was the permanence of
8 plaintiff's loss of smell caused by an intervening event occurring after she filed her claim.
9 Therefore, plaintiff is not entitled to amend her administrative claim on this ground.

   3. Development of Gastroenteritis

11 Finally, plaintiff contends that in January 2011, she developed a new condition of severe
12 gastroentiritis because of the narcotics she has been required to take as a result of the accident.
13 Therefore, she argues, she should be allowed to amend her administrative claim. Dckt. No. 36
14 at 5, Ex. L. Plaintiff submits an Emergency Room report from a January 23, 2011 visit to the
15 Mendocino Coast District Hospital. *Id.* During that visit, plaintiff complained of persistent
16 vomiting and was diagnosed with "Persistent vomiting, likely combination of viral
17 gastroenteritis and narcotic withdrawal." *Id.* The report noted that plaintiff's medications
18 consisted of OxyContin, oxycodone, meloxicam and gabapentin, and her discharge instructions
19 consisted of the following: "Zolfran 4 mg, #10, 1 every 6 to 8 hours as needed for nausea.
20 Drink plenty of liquids. Take your medications as before. Call Dr. Jonlin tomorrow if you are
21 not improving and return to the emergency room if worse or if concerned." *Id.*

22 According to defendant, the evidence that plaintiff relies on does not amount to newly
23 discovered evidence sufficient to justify amendment of plaintiff's administrative claim since
24 plaintiff cites no evidence to support the assertion that high doses of narcotics led to her "new
25 condition" of gastroenteritis, nor does she establish why a case of viral gastroenteritis and
26 narcotic withdrawal relates to her administrative claim and/or the injuries she sustained in the

11

accident. Dckt. No. 38 at 6.

Here, as defendant notes, plaintiff has not presented any evidence demonstrating that her viral gastroenteritis and narcotic withdrawal are connected to the accident at issue. Therefore, plaintiff has not met her burden of showing that she should be permitted to amend her administrative claim under either of the exceptions set forth in § 2675(b). *See Kahle v. United States*, 2008 WL 3893368, at *1 (D. Nev. Aug. 21, 2008) (granting defendant's motion to limit plaintiff's recovery to exclude a newly alleged medical condition since plaintiff failed to present medical documentation linking the newly alleged medical conditions to the accident at issue).

IV. <u>CONCLUSION</u>

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to amend her complaint and her administrative claim is denied; and

2. The March 21, 2012 hearing thereon is vacated.

DATED: March 20, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE